# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| WU FENG ZHANG, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 4:06-cv-02046-RBP-JEO |
| | ) | |
| ROSEMARY L. MELVILLE, ACTING | ) | |
| DISTRICT DIRECTOR, ICE; MICHAEL | ) | |
| J. GARCIA, DIRECTOR, | ) | |
| HEADQUARTERS-ICE; and ALBERTO | ) | |
| GONZALEZ, ATTORNEY GENERAL, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

Petitioner Wu Feng Zhang has filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 in which he is challenging his detention pending removal to China. (Petition).[1] The respondents were required to show cause why the requested relief should not be granted. Upon consideration of the matter, the court finds that the petition is due to be denied without prejudice.

## BACKGROUND

The petitioner is a native of and citizen of China. He received permanent resident status in about 1996. On November 27, 1998, he was arrested for the interstate transportation of stolen property. (William Castano Declaration (Ex. 1) (hereinafter "Castano Dec.") at ¶ 3).[2] He was convicted on June 18, 1999, in the United States District Court for the District of South Carolina on the offense. He was sentenced to serve three years probation. *Id*.

On September 22, 2000, he was arrested in North Carolina for possessing a firearm after

---

[1] The petition is located at document 1.

[2] The exhibits are located at document 12.

being convicted of a felony and possessing stolen goods that were obtained by false pretenses. *Id*. at ¶ 6.  The Moore County District Court dismissed the charges without prejudice.  *Id*.

On June 15, 2001, the petitioner was convicted in the United States District Court for the Middle District of North Carolina for possessing and uttering counterfeit reserve notes.  He was sentenced to twelve months incarceration, followed by three years supervised release.  *Id*. at ¶ 7.

On July 23, 2001, the petitioner's probation was violated and he was sentenced to twenty-one months incarceration.  *Id*. at ¶ 8.

On October 30, 2002, an Immigration Judge ordered the petitioner deported.  On February 11, 2003, the Chinese Consul refused to provide the petitioner with travel documents.  *Id*. at p. 2.  Specifically, the Consul stated as follows:

> Mr. Zhang entered the United States in 1992 and was granted lawful perminent [sic] resident status on [sic] 1996.  His wife and 2 kids are US citizens and living in the United States.  To remove him out of the United States would surely break his family[.]  Therefore[,] the Consulate General has no ground for favoring his deportation, which would lead to the tragic separation of him [sic] and his family.

(Pet. Ex. A).[3]

On June 10, 2003, the petitioner was ordered released under supervision by Immigration and Customs Enforcement ("ICE").  However, he did not report to the Charlotte, North Carolina field office for follow-up supervision visits as required by the terms of his release.  *Id*.

On December 20, 2005, the petitioner was convicted in the United States District Court for the Middle District of North Carolina for a "Parole/Supervised Release" violation in that he failed to notify his probation officer concerning his change of address.  (Petition at p. 3).  He was sentenced to fourteen months custody followed by a supervised release term of twenty-two

---

[3] The petitioner's exhibits are located at document 15 unless noted elsewhere.

months.  Castano Dec. at ¶ 9.[4]

Following the completion of his sentence on the supervised release violation, he was returned to the custody of ICE authorities.  According to the respondents, the petitioner has been denied bond pending his deportation because he "has violated probation twice and did not report to ICE after being released on Order of Supervision" and he is believed to be a "flight risk."  *Id*. at p. 2.

The petitioner filed the present petition on October 11, 2006.  He alleges that because "there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future, Petitioner is being deprived of his liberty interest in violation of the Constitution and law of the United States." (Petition at p. 3).  Specifically, he alleges that the respondents are violating § 241(a)(6) of the Immigration and Naturalization Act (8 U.S.C. § 1231(a)(1)(A) & (B)), as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2002) and *Bihn Phan v. Richard Smith*, 56 F. Supp. 2d 1158 (W.D. Wash. 1999).  *Id*. at p. 4.  He further alleges that they have violated his rights to procedural and substantive due process.  *Id*. at pp. 4-6.

The respondents counter that the petitioner has not named the proper respondent and thus his petition is due to be dismissed.  (Response at pp. 3-5).[5]  Additionally, they assert that the petitioner is a deportable alien and is properly being detained pending his deportation.  *Id*. at 5-14.

On December 29, 2006, the petitioner's custody situation was reviewed by ICE officials.  (Doc. 12-3).  The Agency determined that given the petitioner's two criminal convictions, one of

---

[4] The petitioner's file also indicates that he has additional charges including "ASLT FEMALE-96 (60D SUSP); COMM THRTS-97 (30D SUSP); THRTS-98 (30D SUSP); MISD AWDW-99."  The respondents' answer does also indicate that "no documents were found to verify and confirm these allegations."  *Id*. at ¶ 10.

[5] The response is located at document 12.

which involved possession of a firearm, and the two violations of supervised release during probation, that the petitioner was a risk of flight. *Id*. He currently remains in custody within this District.

## DISCUSSION

### The Custody Issue

The Supreme Court held that in cases challenging physical custody, "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *See Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004); *see also* 28 U.S.C. § 2243 ("The writ, or order to show cause, shall be directed to the person having custody of the person detained."); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95 (1973) ("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody."); *Macias v. Greene*, 28 F. Supp. 2d 635, 637 (D. Colo. 1998) (holding "[t]he proper respondent to a habeas action is the habeas petitioner's custodian"). More specifically, for "physical confinement" habeas actions, the proper respondents are the wardens of the facilities where the habeas petitioners are being held. *Rumsfeld*, 542 U.S. at 435. This is logical because the writ acts against the person who has "day-to-day control over [the] prisoner." *Brittingham v. United States*, 982 F.2d 378, 378 (9th Cir. 1992); *see also Ex Parte Endo*, 323 U.S. 283, 306 (1944) (writ is directed to prisoner's "jailer"); *Guerra v. Meese*, 786 F.2d 414, 416 (D.C. Cir. 1986) (Parole Commission is not a custodian despite its power to release the petitioner).

The Assistant Secretary of ICE is not the proper respondent in a habeas petition. The United States Court of Appeals for the Tenth Circuit Court of Appeals held that the warden of a

4

detention facility – the person actually holding the petitioner in physical custody – is the proper respondent for a habeas action, not the Attorney General. *Blango v. Thornburgh*, 942 F.2d 1487, 1491-92 (10th Cir. 1991). "Otherwise, the Attorney General of the United States could be considered the custodian of every alien and prisoner in custody because [he] ultimately controls the [INS] district directors and [the] prisons." *Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir. 1994); *see also Vasquez v. Reno*, 233 F.3d 688, 693, 696 (1st Cir. 2000). The Assistant Secretary of ICE is not the warden of the facilities where the habeas applicants are being held, and, therefore, is not the proper respondent for a habeas petition. The petitioner has failed to name the correct respondent, therefore, his petition would be due to be dismissed without prejudice or he would be required to amend his present petition. However, because that would not resolve the present matter, the court will further consider the respondents' next argument.

### The Merits

The respondents also assert that as a deportable alien, the petitioner is not entitled to release pending deportation in view of the recent request to the Chinese consulate for the necessary travel documents. (Response at 10). The petitioner retorts that his release is not likely in the reasonably foreseeable future. (Reply at 7).[6]

Under 8 U.S.C. § 1231(a)(2), after entry of a final removal order, deportable aliens must be held in custody for a period of 90 days while removal arrangements are made final with the accepting country. Under §1231(a)(6) when removal arrangements cannot be finalized within the 90-day period, an alien ordered removed who is: (1) "inadmissible," or (2) "removable" for violating status requirements, entry conditions, or the criminal law, or for reasons of security or

---

[6]The petitioner's reply is located at document 15.

foreign policy, or (3) determined by the Attorney General to be a risk to the community or unlikely to comply with the removal order, "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision." 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001), the United States Supreme Court addressed the issue of continued detention following the issuance of a final order of deportation. In that matter, two cases were consolidated. Petitioner Zadvydas was born in Lithuania to German parents, but later immigrated to the United States. He had a long criminal record including drug offenses, attempted robbery, attempted burglary, and theft. *Zadvydas* at 684. He was ordered deported but neither Lithuania nor Germany would admit him because he was not a Lithuanian or German citizen. *Id*. In 1995, after being held in custody for nearly a year while awaiting deportation, Zadvydas sought habeas review pursuant to 28 U.S.C. § 2241. The court ordered Zadvydas released, determining that the Government would never effectuate his deportation, thereby rendering his detention both permanent and unconstitutional. *Id*. at 2491-92. The Fifth Circuit Court of Appeals reversed the lower court's decision finding no constitutional violation as long as deportation remained a possibility, the Government continued its good faith efforts to achieve removal, and Zadvydas' detention was subject to periodic administrative review. *Id*.

Petitioner Kim Ho Ma in that case was a permanent resident alien with Cambodian citizenship. He was convicted of manslaughter for a gang-related shooting. Ma could not be deported because there was no deportation treaty between the United States and Cambodia. After being detained beyond the 90-day period provided for in §1231(a)(2), Ma also filed a petition for habeas review. The lower court held that his continued detention was

unconstitutional unless the respondent could show a "realistic chance" that he ultimately would be deported. It further found that because Cambodia would not accept Ma without an effective deportation treaty in place, the respondent could not make the requisite showing. The Ninth Circuit Court of Appeals affirmed the lower court, finding that the statute "did not authorize detention for more than a reasonable time beyond the 90-day period authorized for removal." *Id*. at 2491-92.

The United States Supreme Court stated, "The post-removal-period detention statute applies to certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'" *Zadvydas*, 533 U.S. at 688. The Court also stated that in determining the propriety of continued detention

> the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. . . . And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period. . . .

*Id*. at 699-700. The Court also recognized that six months is a "presumptively reasonable period of detention." *Id*. at 701. The Court went on to state as follows:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id*. at 701.

The respondents argue that as an inadmissable alien or criminal alien, the petitioner does not fall within the protections of *Zadvydas* and may be indefinitely detained pending deportation to his homeland as the state of the law currently exists within the Eleventh Circuit. *Jean v. Nelson*, 727 F.2d 957 (11th Cir. 1984) (en banc); *Shaughnessy v. United States ex rel Mezei*, 345 U.S. 206 (1953). The court disagrees in that the "aliens" in *Jean* and *Shaughnessy* were either "excludable" or "unadmitted" aliens. In contrast, the petitioner is a "permanent resident" alien. Accordingly, the court finds *Zadvydas* applicable.[7]

Next, the respondents argue that the petitioner properly is being held under § 1231(a)(6). In support of this contention, they assert that the Department of Homeland Security ("DHS") requested on December 29, 2006, from the Chinese consulate, the travel documents necessary to deport the Petitioner (doc. 12-3 (Post Order Custody Review Worksheet) at p. 5) and the petitioner's detention period only began running from the point he entered ICE custody on September 12, 2006 (*id*. at p. 2). Thus, the respondents then note that at the time of the filing of their response on January 25, 2007, the continued detention was well within the six (6) month

---

[7]In *Clark v. Martinez*, 543 U.S. 371,125 S. Ct. 716, 160 L. Ed. 2d 734 (2005), the Supreme Court extended the application of *Zadvydas* to inadmissible aliens. The Court stated that after the six month period, "the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 377-78 (citing *Zadvydas*, 533 U.S. at 701).

8

time period discussed in *Zadvydas*. They conclude that these facts, including the recent request to the Chinese consulate coupled with the fact that the petitioner is a definite flight risk makes the decision to detain him reasonable.

As quoted above, the Supreme Court in *Zadvydas* did not require that every alien who has been in detention for more than six months be released. As long as removal is reasonably foreseeable, the alien's potential dangerousness or risk of his committing further crimes may be considered in determining whether to retain custody. *Zadvydas*, 533 U.S. at 699-700; *see also* 8 C.F.R. § 241.4 (2004). In *Akinwale v. Ashcroft*, 287 F.3d 1050 (11th Cir. 2002), the court stated that "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."

The respondents assert that the petitioner cannot argue that his continued detention violates *Zadvydas* or that he has met his burden of proof under *Akinwale*. Specifically, they assert that

> the Department's efforts to remove the Petitioner are ongoing. The Petitioner's actions speak for themselves, when one considers the Petitioner's criminal record and behavior. This behavior included two felonies, one of which was with possession of a firearm, as well as, the Petitioner's refusal to comply with supervision and probation dictated by the United States District Court for the Middle District of North Carolina. It is clear that the Petitioner does not respect and is not willing to adhere to the rulings and dictates set forth by the United States judicial system.

(Response at 14). The petitioner retorts that he has met his burden of proof under *Zadvydas* and *Akinwale*. Specifically, he states that he has shown that (1) removal in the foreseeable future is unlikely, (2) he is not a risk of flight because he has a wife and three children in Florida, and

(3) he is not a "special risk" of danger to the community. (Response at 6-12).

The court finds that the petitioner has not demonstrated that there is no significant likelihood of removal in the reasonably foreseeable future. Even though the Chinese Consul declined to issue travel documents after his first order of deportation back in February 2003, it is reasonable for the United States to again ask the Chinese consulate for the necessary travel documents three and one-half years later. Additionally, in view of the petitioner's violation of his supervised release and his violation for failing to report, it is reasonable to believe that the Chinese consulate might reconsider its prior position. At a minimum, it cannot be said at this juncture that there is no significant likelihood of removal in the reasonably foreseeable future.

## CONCLUSION

Premised on the foregoing, the present petition is due to be denied and dismissed without prejudice to the petitioner's right to file another petition when he is able to state a claim for relief under *Zadvydas*.

**DONE**, this the 18th day of April, 2007.

_____
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**